[No. 1857-1. Division One—Panel 2. January 8, 1973.]

BARBARA BLAKELY, *Appellant*, v. THE HOUSING AUTHORITY OF THE COUNTY OF KING *et al.*, *Respondents*.

*Allan B. Ament* and *Linda L. Dawson,* for appellant.

*Montgomery, Purdue, Blankinship & Austin* and *R. George Ferrer,* for respondents.

HOROWITZ, C.J.—Plaintiff, a public housing tenant of the Housing Authority of the County of King, a municipal corporation, seeks declaratory and injunctive relief in a class action in support of her claim that a lease clause prohibiting pets is void. The trial court dismissed her complaint pursuant to CR 12(b)(6), CR 12(c). Plaintiff appeals.

Defendant housing authority, known as HACK, operates a federally subsidized public housing project located in Seattle, Washington, in an area called Park Lake Home Sites 1 and 2, for low income persons. HACK derives its authority from RCW 35.82. HACK, on May 12, 1971, leased a housing unit in Site 2 to plaintiff under a monthly lease. Lease paragraph 6g provides:

> *Pets*—Tenant shall not keep cats, dogs, or other pets (excluding goldfish, canaries or the like) on the premises except with the written approval of the Landlord. In no

event will pets be allowed which become a nuisance on the Project.

Plaintiff apparently brought her pet cat with her into the leased premises, but she alleges she did so "with the full knowledge and consent of defendants HACK" and the housing manager.

Prior to May 23, 1972, HACK adopted a new lease form applicable to Sites 1 and 2. That lease form contained clause 6(d) which also prohibited pets in language substantially similar but not altogether identical to clause 6g of the 1971 lease. Plaintiff never signed the new lease form.

Plaintiff's 1971 lease contained no provision for a grievance procedure hearing. The new lease form did. Each lease contained provisions generally to the effect that the landlord's failure in one or more instances to insist on strict observance of any lease provision should not constitute a waiver of future performance and that the provisions would remain in full force and effect.

On May 8, 1972, plaintiff received from HACK a written notice addressed to all Site 2 residents. The notice read in part:

> When you were housed in Park Lake, Site II, you signed a restriction slip that you had no dog or cat. In the past couple of months it has come to our attention that many have acquired pets which is in violation of your lease agreement.
>
> THEREFORE, the Housing Authority of the County of King, is giving you *10 days* from receipt of this notice to either get rid of your pet or you may request a transfer to Site I and keep your pet.
>
> If neither of the above alternatives is done, you will be considered in violation of your lease.

Plaintiff refused to request a site transfer and continued to keep her cat in the leased premises. On May 23, 1972, defendant served plaintiff with a "Notice to Terminate Tenancy." A copy of pet clause paragraph 6(d) contained in the 1972 new lease form was attached to the notice. The attachment also included a notice that all grievances aris-

ing under the lease should be processed under the "grievance procedure of the Landlord . . . which procedure is posted in the Project Office and incorporated herein by reference."

Plaintiff did not take advantage of the grievance procedure described and she refused to vacate her leased unit. HACK then commenced an unlawful detainer proceeding. Subsequently, on July 12, 1972, plaintiff commenced the instant suit for injunctive and declaratory relief "on behalf of herself and all individuals and families living in housing projects administered and operated by defendants." She filed motions, supported by her affidavits, for leave to proceed in forma pauperis, to have her action declared a class action, and to obtain a temporary restraining order. Plaintiff obtained an order to proceed in forma pauperis and a temporary restraining order to maintain the status quo. Defendants filed an answer admitting and denying various paragraphs in plaintiff's complaint. Defendants filed no motion to stay plaintiff's action, nor did they seek its abatement by pleading the pendency of the unlawful detainer action. Instead, defendants moved to dismiss plaintiff's complaint under CR 12(b)(6), CR 12(c), treating plaintiff's affidavits in support of her several motions as part of plaintiff's showing in opposition to the motion to dismiss.

Plaintiff's sole contentions, below and on appeal, in support of her claim for declaratory and injunctive relief are described in paragraphs 31 and 32 of her complaint. She contends the pet clause contained in paragraph 6(d) of the 1972 lease form is void because (1) the lease is an adhesion contract; (2) the enforcement of the clause is arbitrary and capricious, representing discrimination against plaintiff because of her indigency, in violation of due process; (3) the enforcement of the clause violates plaintiff's common-law right of peaceful enjoyment of her property; (4) that the clause violates a quoted provision of DHUD Circular 12-17-68 binding on defendants; and (5) the clause violates plaintiff's right to equal protection under the Fourteenth

Amendment and Const. art. 1, § 12. Plaintiff's prayer seeks a declaration that lease paragraph 6(d) is void; that defendants be enjoined from evicting plaintiff and enforcing paragraph 6(d); that her action be declared a class suit and that plaintiff be allowed to represent the class. Defendants, by way of response, contend that on the record here only questions of law are raised determinable on this motion to dismiss. We agree.

Preliminarily, it should be pointed out: (1) Plaintiff's attorney stated below that, by agreement of counsel, the unlawful detainer summons and complaint were stricken "pending the court's determination of the motions presently before it." Defendants do not disagree. The question does not arise, therefore, whether an unlawful detainer suit is subject to a motion in the instant case to stay, or whether pleadable as a defense in abatement, or whether a waivable defense. See *Gilman v. Gilman*, 41 Wn.2d 319, 249 P.2d 361 (1952); *LaFrance v. LaFrance*, 127 Conn. 149, 14 A.2d 739 (1940); *V.D. Anderson Co. v. Young*, 128 Tex. 631, 101 S.W.2d 798 (1937); 1 Am. Jur. 2d *Abatement, Survival, and Revival* §§ 7, 11, 26, 27 (1964). (2) Plaintiff does not contend she has been denied due process, either under the 1971 or 1972 lease form, because of a refusal to permit her to use the available grievance procedure described in the May 23, 1972 notice. See *Glover v. Housing Authority*, 444 F.2d 158 (5th Cir. 1971); *Brown v. Housing Authority*, 340 F. Supp. 114 (E.D. Wis. 1972); *Housing Authority v. Mosby*, 53 Wis. 2d 275, 192 N.W.2d 913 (1972). *Cf. Johnson v. Tamsberg*, 430 F.2d 1125 (4th Cir. 1970); *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir. 1970); *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir. 1970). Plaintiff has never availed herself of the proffered grievance procedure and has accordingly waived her right to the benefit thereof. (3) Plaintiff does not claim that the 10-day period given in the May 8, 1972 notice from HACK "to either get rid of your pet or you may request a transfer to Site I and keep your pet" is insufficient notice, nor is there a showing of insufficiency. The prima facie reasonableness

of the 10-day period is supported by analogy to the 10-day period under the unlawful detainer statute when dealing with covenants other than the covenant to pay rent. RCW 59.12.030(4). Accordingly, we treat the May 8, 1972 written notice reasserting the enforceability thereafter of the pet clause—a continuing covenant—as presumptively valid. *See Mee v. Marlyn Apartment Co.,* 31 A.2d 864 (D.C. Mun. Ct. App. 1942). An unlawful detainer proceeding may be based upon the breach of a valid pet clause. *Longmoor Corp. v. Jeffers,* 205 S.W.2d 234 (Mo. App. 1947).

Defendant does not claim that plaintiff lacks standing to assert the claim for declaratory relief she seeks. Plaintiff is a tenant, eligible and invited to remain in the public housing provided by HACK. She may remain a tenant if she agrees to observe the pet clause under her existing lease or under a 1972 lease form which presumably plaintiff would be asked to sign for housing in Site 1. Plaintiff wishes to remain a tenant in Park Lake Home Site 2, but she objects to the validity of the pet clause and to its enforcement as violative, *inter alia,* of due process to which she claims to be entitled. *See Rudder v. United States,* 226 F.2d 51 (D.C. Cir. 1955). Under the circumstances described, she is a "person interested," entitled to "obtain a declaration of rights, status or other legal relations" both with respect to the 1971 lease she signed and the 1972 lease form she is offered, but to which she objects. Plaintiff's standing to sue is supported by the rationale of cases such as *O'Melia v. Sweetwater County School Dist. 1,* 497 P.2d 540 (Wyo. 1972); *Phillips v. Libertyville,* 120 Ill. App. 2d 172, 256 N.E.2d 351 (1970); *Doe v. Bolton,* 319 F. Supp. 1048 (N.D. Ga. 1970); RCW 7.24.140.

Plaintiff's contentions, directly or indirectly, are premised on the invalidity of the pet clause in a public housing lease. The general rule is that a clause prohibiting pets in premises leased is a valid clause. A tenant who violates such a clause after the giving of the required notice is guilty of unlawful detainer. The pet clause may be

expressly or impliedly waived, but the validity of the clause has been repeatedly upheld. *East River Housing Corp. v. Matonis*, 34 App. Div. 2d 937, 312 N.Y.S.2d 461 (1970); *Mutual Redevelopment Houses, Inc. v. Balducci*, 37 App. Div. 2d 943, 325 N.Y.S.2d 765 (1971); *Capital View Realty Co. v. Meigs*, 92 A.2d 765 (D.C. Mun. Ct. App. 1952); *Mee v. Marlyn Apartment Co., supra; Longmoor Corp. v. Jeffers, supra.*

■ If, on a motion to dismiss under CR 12(b)(6), CR 12(c), the complaint is aided by affidavit, the motion, as the rule provides, is treated as if it were a motion for summary judgment under CR 56. In a summary judgment case, the nonmoving party must make a showing in support of his claim of invalidity, waiver, or estoppel, so as to demonstrate the existence of a genuine issue of material fact requiring trial. *W.G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 438 P.2d 867, 31 A.L.R.3d 1413 (1968); *Washington Osteopathic Medical Ass'n v. King County Medical Serv. Corp.*, 78 Wn.2d 577, 478 P.2d 228 (1970); *O'Brien v. Tribune Publishing Co.*, 7 Wn. App. 107, 499 P.2d 24 (1972). The facts shown must be material, *i.e.*, facts upon which the outcome of the litigation depends. Mere argumentative assertions, whether or not contained in the complaint or affidavits, are insufficient. *Capitol Hill Methodist Church v. Seattle*, 52 Wn.2d 359, 324 P.2d 1113 (1958); *Richards v. Midkiff*, 48 Hawaii 32, 396 P.2d 49 (1964); *Central Credit Collection Control Corp. v. Grayson*, 7 Wn. App. 56, 499 P.2d 57 (1972).

In the instant case plaintiff does not deny the truth of the contents of a letter in the record dated June 12, 1972 from the attorneys for HACK to plaintiff's attorney. The letter states that the pet clause was adopted

due to close quarters in many of the newer developments and problems of health and sanitary conditions and also the problem of administering the rule that only one pet is allowed per family. Occasionally this has been observed to get out of hand and one family may have several pets at one time, to the dismay of their neighbors.

The letter further points out that the Community Services Coordinator, who had surveys made concerning the desirability of permitting pets, had informed HACK "that one of the resident advisory panels showed that residents do not favor pets." The letter then states that "the Housing Authority Commissioners had been over the question many times," that the commissioners thought the pet clause proper and continued to think so.

The powers conferred and the duties imposed upon the public housing authority are clearly sufficient to permit HACK to adopt a lease clause prohibiting pets. Under RCW 35.82.070(4), the public housing authority, acting through its commissioners, is authorized "To lease or rent any dwellings, houses, accommodations, lands, buildings, structures or facilities embraced in any housing project . . ." RCW 35.82.090 requires the public housing authority to observe certain duties with respect to rentals and tenant selection for the benefit of "persons of low income and at rentals within the financial reach of such persons . . ." RCW 35.82.080 declares it to be a state policy "that each housing authority shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for dwelling accommodations at the lowest possible rates consistent with its providing decent, safe and sanitary dwelling accommodations . . ." Broad powers are conferred, including the power to issue bonds to finance construction of public housing. RCW 35.82.130. Such bonds are or may be secured by a pledge of rentals. RCW 35.82.150. The bonds sold are legal investments for public and private bodies, including trusts and estates. RCW 35.82.220.

A determination that the pet clause is valid is fatal to plaintiff's contentions premised on a contrary assumption. There is no violation of plaintiff's common-law right of peaceful enjoyment. Such a right exists if a tenant does not violate the valid provisions of his lease. *See Longmoor Corp. v. Jeffers, supra.* Defendants, following the notice of May 8, 1972 reaffirming the pet clause—a continuing covenant—have done nothing to waive its provisions. *See Mee*

*v. Marlyn Apartment Co., supra.* Furthermore, there is no showing the pet clause was inserted in the leases because of plaintiff's indigency. All tenants were treated alike, and the pet clause was inserted for their over-all benefit and comfort in maintaining the quality of the housing and assuring a housing future for "persons of low income." The action taken is all the more defensible because tenants wishing to keep their pets were permitted to do so by removing to public housing in Site 1, containing housing whose quality is substantially similar to Site 2. To have removed the pet clause would have been as unfair to tenants who were opposed to pets as the retention of the pet clause is claimed to be to tenants who favor pets.

 The contention that the pet clause violates the requirements of DHUD Circular 12-17-68, issued by the United States Department of Housing and Urban Development (HUD), is unfounded. We may assume the provision of the circular on which plaintiff relies was binding upon HACK. *Housing Authority v. Mosby,* 53 Wis. 2d 275, 192 N.W.2d 913 (1972). *See Thorpe v. Housing Authority,* 393 U.S. 268, 21 L. Ed. 2d 474, 89 S. Ct. 518 (1969); *Omaha Housing Authority v. United States Housing Authority,* 468 F.2d 1 (8th Cir. 1972). That provision prohibits local public housing authorities from establishing policies "which automatically deny admission or continued occupancy to a particular class." This provision does not purport to prohibit pet clauses protective of the property under the circumstances here. The provision appears to deal with discrimination in eligibility requirements among persons of low income.

 Plaintiff contends that pet clause 6(d) in the public housing lease is void because the lease is an adhesion contract. In *Standard Oil Co. v. Perkins,* 347 F.2d 379 (9th Cir. 1965), the court defined such a contract as follows:

"Adhesion contract" is a handy shorthand descriptive of standard form printed contracts prepared by one party and submitted to the other on a "take it or leave it" basis. The law has recognized there is often no true

equality of bargaining power in such contracts and has accommodated that reality in construing them.

347 F.2d 383, n.5. *See generally* 3 A. Corbin, *Contracts* § 559 at 271 (1960). Assuming that we are dealing with an adhesion contract, it does not follow that the pet clause is void. The characterization of a lease as an adhesion contract because exacted by reason of a gross disparity in bargaining power is to enable the court to protect the injured party from an unconscionable contract provision. *See* Indritz, *The Tenants' Rights Movement,* 17 N.M. L. Rev. 1, 107 (1971); Schoshinski, *Public Landlords and Tenants: A Survey of the Developing Law,* 1969 Duke L.J. 399 (1969). The record here fails to show the pet clause is such a provision.

■ Finally, we find no violation here of equal protection in the use and enforcement of a public housing lease clause prohibiting pets. The equal protection clause of the United States Constitution and of the state constitution permits reasonable classification. It prohibits only unequal treatment of persons in the same class. *See Washington Kelpers Ass'n v. State,* 81 Wn.2d 410, 421, 502 P.2d 1170 (1972). We have already pointed out the reasonableness of the distinction made in the letter of June 12, 1972, between tenants on the basis of whether they favor or do not favor pets. We find no abuse of discretion in the classification made.

Having determined that the plaintiff's contentions above described must be overruled, such determination necessarily requires a like result with respect to plaintiff's right to injunctive and class suit relief. The plaintiff's action was properly dismissed. *See East River Housing Corp. v. Matonis, supra; Mutual Redevelopment Houses, Inc. v. Balducci, supra.*

The issues that may be involved in an unlawful detainer suit by HACK, if pursued, are determinable in light of this opinion.

The judgment of dismissal is affirmed.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied February 20, 1973.

Review denied by Supreme Court May 1, 1973.