[No. 3886–1. Division One. October 3, 1977.]

JUDITH S. PETERICK, *as Administratrix, Appellant,*
v. THE STATE OF WASHINGTON, ET AL,
*Respondents.*

IRIS J. WILSON, *Appellant,* v. EXPLOSIVES
CORPORATION OF AMERICA, ET AL,
*Respondents.*

JUDITH S. PETERICK, *as Administratrix, Appellant,*
v. EXPLOSIVES CORPORATION OF AMERICA,
ET AL, *Respondents.*

164

·Benson, Chadwick, Stege & Wines, Kirk R. Wines, Schroeter, Goldmark & Bender, John Goldmark, Wickwire, Lewis, Goldmark, Dystel & Schorr, Charles A. Goldmark, David C. Crosby, and Lee A. Holley, for appellants.

Slade Gorton, Attorney General, Angelo R. Petruss, Assistant, Merrick, Hofstedt & Lindsey, James M. Lindsey, Jr., Detels, Draper & Marinkovich, and Frank W. Draper, for respondents.

PER CURIAM.—This is an appeal by the plaintiffs Peterick and Wilson, acting as the representatives of their respective decedents, from the granting of motions for summary judgment brought by the defendants in an action arising out of a fatal explosion at an explosives plant. The action was initiated by the plaintiffs subsequent to their recovery on claims with the Department of Labor and Industries pursuant to RCW Title 51.

On October 13, 1970, an explosion involving a liquid explosive, Astrolite, occurred at the Raging River explosives manufacturing and test site of the Explosives Corporation of America (hereinafter EXCOA). James Peterick and George Wilson, both employees of EXCOA, were killed in the explosion. EXCOA, 92 percent of the stock of which was owned by its parent, Rocket Research Corporation

(hereinafter Rocket), designed, built and operated the Raging River facility. The liquid explosive had been developed by Rocket. The patent to the explosive was assigned to EXCOA by Rocket in exchange for stock.

The State of Washington was the owner of a portion of the land making up the test site, and had leased this section to EXCOA. The Department of Labor and Industries establishes safety regulations for working conditions throughout the state, pursuant to the Industrial Insurance Act. EXCOA, although obligated to follow such regulations, as of October 13, 1970, had not given notice to the responsible state safety inspector that the Raging River plant was ready for final inspection. As a result, the site had not yet been inspected on the date of the accident.

The plaintiffs brought wrongful death actions. The trial court, after reviewing the documents and affidavits submitted pursuant to CR 56 and hearing arguments, granted the motions for summary judgment. The plaintiffs appeal.

> *Peterick v. State. Is an action against state officials barred by the 2–year statute of limitations?*
>
> *Wilson v. EXCOA. Does the 2–year statute of limitations apply to public officials in a wrongful death action?*

The plaintiffs Peterick and Wilson contend that since their cause of action is based upon a claim for wrongful death, the statutory limitation on bringing suit on this matter is governed by RCW 4.16.080(2) (the 3–year statute of limitations) instead of RCW 4.16.130 (the 2–year statute of limitations). They base their assertion on the proposition that it is the *nature* of the underlying cause of action, and not the status or employment of the defendants, that determines which statute of limitations is applicable. While we agree with the proposition, we disagree with its application by plaintiffs here.

The statutory provisions pertinent to this issue read:

4.16.080 Actions limited to three years. Within three years:

. . .

(2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated;

4.16.130 Actions for relief not otherwise provided for. An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued.

The Washington State Supreme Court, faced with contentions on two prior occasions substantially the same as plaintiffs' in this case, ruled in favor of the application of the 2-year statute of limitations. In the first case, *Northern Grain & Warehouse Co. v. Holst*, 95 Wash. 312, 163 P. 775 (1917), the plaintiff alleged that licenses to operate the grain warehouse "were issued carelessly, knowingly and negligently by [public officials] without obtaining a bond from Nichols, and that thereafter the [public officials] permitted Nichols to openly conduct said warehouses as public warehouses without exacting from him a bond", ultimately causing the plaintiff harm. *Northern Grain & Warehouse Co. v. Holst, supra* at 313. The public officials responded by arguing that their alleged negligent official acts were not the direct cause of plaintiff's injury, and that therefore the 2-year statute of limitations applied. The court agreed and stated:

> In the present case, the direct liability sought to be enforced does not arise out of the failure of the respondent officials to exact a bond from Nichols. That failure would not have injured appellant had Nichols delivered the wheat called for by its receipts or been able to pay its value. . . . The direct cause of appellant's loss was the default of Nichols and not the default of respondents.

*Northern Grain & Warehouse Co. v. Holst, supra* at 319.

In a later case, *Constable v. Duke*, 144 Wash. 263, 257 P. 637 (1927), the plaintiff alleged that certain state officials failed to make an examination of a bank's financial condition and that they "'in bad faith, and in dereliction of their duties, wilfully, maliciously, wrongfully and fraudulently,

neglected and refused' to close the bank, and suffered it to continue its banking business .as a solvent and going concern," resulting in plaintiff's being injured. *Constable v. Duke, supra* at 264. The public officials in *Constable* argued that the 2–year statute of limitations applied and that the reasoning of the *Northern Grain* case was correct and directly in point. The court agreed and held:

> That [*Constable* and *Northern Grain*] are the same in principle we have no doubt. The wrong alleged in each case as the foundation of the cause of action is the dereliction of a public officer in the performance of his official duty, and the statute which bars the action in the one case must necessarily bar it in the other. Nor are we persuaded that the question presented was erroneously decided. The case was presented by able counsel, and all of the reasons the appellant now urges for a contrary conclusion were presented in the arguments. These the opinion meets and answers, and, without repeating the reasons there given for our conclusion, we feel that we reached a correct conclusion.

*Constable v. Duke, supra* at 266–67.

 As the plaintiffs did not file this cause of action against the State until sometime after the expiration of the 2–year limit, these two cases control the matter before us. Just as in *Northern Grain* and *Constable,* the plaintiffs base their ultimate injury on defendant state officials failing to perform their official duties. Here, that failure allegedly occurred in connection with the lease of state land and the regulation of explosives manufacturing by EXCOA. Again, similar to the causation hurdle the plaintiffs in the *Northern Grain* and *Constable* cases were unable to clear, the plaintiffs here do not establish a causal connection. The requisite direct liability for the 3–year statute of limitations sought to be enforced here does not arise out of the failure of the state officials to perform official duties, for this alleged failure would not have resulted in plaintiffs' injuries had the explosion not occurred. It was the explosion, however it was caused, that was the direct cause of the plaintiffs' injury, *not* negligence on the part of state officials.

Finally, the plaintiffs failed to present evidence to substantiate their allegations of a continuing injury existing due to any coverup of information concerning the accident by the State. We hold that the 2–year statute of limitations applies, and that the claim against the state officials was properly dismissed. *Constable v. Duke, supra; Northern Grain & Warehouse Co. v. Holst, supra.*

> *Peterick v. State. Did the State of Washington, as owner–lessor of the land upon which the explosion occurred, have a duty to the deceased workmen?*
>
> *Wilson v. EXCOA. Could the State of Washington be liable for activities carried on on state lands which are ultrahazardous?*

The plaintiffs contend that the State as lessor of the premises involved should be held liable, as landlord, for the injuries resulting from the explosion. The plaintiffs base this contention on a theory that when the State retained both the right to inspect and the right to require compliance with specified safety regulations, it removed itself from the ordinary landlord–tenant relationship and became an active participant in EXCOA's explosive manufacturing process, an inherently ultrahazardous activity, thereby making it liable for plaintiffs' damages. We do not agree.

■ A landlord's liability for injuries resulting from activities of its tenant is limited. This general rule has been expanded on as follows:

> Generally, however, the landlord's obligation and liability are limited to the condition of the premises, and the negligence for the results of which the landlord is ordinarily liable must be in the performance of a duty either to make the premises safe before delivery to the lessee or to keep them safe while in the lessee's possession. The duty and liability of the invitor–lessor do not, as a rule, extend to matters having to do merely with the lessee's management or operation of premises which would be safe except for such management or operation, at least where the lessee is in sole actual control.

(Footnotes omitted.) 49 Am. Jur. 2d *Landlord and Tenant* § 763 (1970).

> Where, however, the landlord is not bound to keep the leased premises in repair, any injury to them, and through them to the tenant, caused by the negligent act of third persons cannot create or cast on the landlord a liability which prior to such act did not exist.

(Footnotes omitted.) 49 Am. Jur. 2d *Landlord and Tenant* § 767 (1970). *See also* 64 A.L.R.3d 339, 344 (1975).

In *Epperly v. Seattle,* 65 Wn.2d 777, 399 P.2d 591 (1965), a wrongful death action had been brought against the City of Seattle as the owner of a damsite. The plaintiff's decedent had been an employee of an independent contractor working on the dam and was fatally injured when a faulty cable of his employer fell on him. The plaintiff, in *Epperly,* argued that (1) the inherently dangerous activity–strict liability doctrine applied preventing the City from delegating responsibility for the accident; and (2) retention by the City of the right to inspect and supervise placed a duty on the City to protect the workers. The court rejected the argument and stated:

> We hold that the plaintiff's right to recovery cannot be based upon any concept rooted in the doctrine of strict liability because the deceased was an employee of the contractor who created the hazard and was engaged upon the project out of which the hazard arose. Thus, he was not within the class of persons protected.
>
> . . .
>
> The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship. . . .
>
> . . .
>
> The general rule is that the owner of premises owes to the servant of the independent contractor employed to perform work on his premises the duty to avoid endangering him by his own negligence or affirmative act, but owes no duty to protect him from the negligence of his own master. . . .
>
> . . .
>
> Although the owner is under a duty to furnish reasonable protection against hidden dangers known, or which

ought to be known to him and not to the contractor or his servants, this duty extends only to latent dangers which the contractor or his servants could not reasonably have discovered and of which the owner knew or should have known. . . .

. . .

In the case at bar, the city did not supervise the activities of the workmen, did not furnish the appliance which failed and it did nothing affirmatively to increase the risk. The premises were safe when turned over to the contractor and knowledge concerning the hazard which arose thereafter was as available to the contractor as to the city. The city had no superior knowledge or superior means of acquiring it.

*Epperly v. Seattle, supra* at 784–87. *See Blackwell v. Cities Serv. Oil Co.,* 532 F.2d 1006, 1007 (5th Cir. 1976); *Sloan v. Atlantic Richfield Co.,* 552 P.2d 157, 160 (Alas. 1976).

■ The doctrine espoused in *Epperly* is applicable here. The retention of both the right to inspect and the right to require compliance *after* inspection with applicable safety statutes and regulations did not reserve to the State the right to exercise day–to–day control over EXCOA's operations, nor did it place upon the State a duty to warn *prior* to inspection of the site. In the absence of such a right to control or a special duty to warn, the State had no obligations beyond those imposed upon a landlord by the common law. The State cannot be held liable for injuries to the plaintiffs that may have been caused by the alleged negligence of their employer. *Cf. Sloan v. Atlantic Richfield Co., supra* at 160.

> *Peterick v. State. Was the State of Washington immune from liability by virtue of the Industrial Insurance Act?*
>
> *Wilson v. EXCOA. Was it error to dismiss the complaint on the grounds that RCW 51.24 barred the suit against the State and its officials?*
>
> *Wilson v. EXCOA. Are negligent inspections made by safety inspectors of the State of Washington a*

*basis for liability in a cause of action against a state and/or its inspectors?*

The plaintiffs Peterick and Wilson assert that the failure of the State to apply sanctions against EXCOA or to take measures to assure EXCOA's compliance with recognized safety standards, makes the State liable for the plaintiffs' resulting injuries. They base this assertion on the theory that RCW Title 51 does not prohibit them from suing the State for injuries caused in the accident, and assert that *Campbell v. Bellevue*, 85 Wn.2d 1, 530 P.2d 234 (1975), overrules the holdings in *Loger v. Washington Timber Prods., Inc.*, 8 Wn. App. 921, 509 P.2d 1009, *review denied*, 82 Wn.2d 1011 (1973), or *Nerbun v. State*, 8 Wn. App. 370, 506 P.2d 873, *review denied*, 82 Wn.2d 1005 (1973), to the contrary. We disagree.

The pertinent statutory provisions in Title 51 are as follows:

> The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in their work, and their families and dependents is hereby provided *regardless of questions of fault* and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end *all civil actions and civil causes of action for such personal injuries* and all jurisdiction of the courts of the state over such causes *are hereby abolished, except as in this title provided.*

RCW 51.04.010 (Italics ours.)

> If the injury to a workman is due to negligence or wrong of another not in the same employ, the injured workman or, if death results from the injury, the surviving spouse, children, or dependents, as the case may be, shall elect whether to take under this title or seek a remedy against such other, such election to be in advance of any suit under this section . . .

RCW 51.24.010.

In *Loger,* there was a liability claim similar to the instant claim. The plaintiff in *Loger* alleged that the State was negligent in that the Department of Labor and Industries (1) had failed to inspect the sawmill where the plaintiff worked, (2) had failed to discover the unsafe and dangerous conditions of a saw, (3) had failed to enforce certain state–recognized safety standards, and, therefore, was liable for injuries to the plaintiff. We rejected those arguments in *Loger,* and stated that under the workmen's compensation act

> all common–law forms of action which might arise by reason of an injury to an employee while in the scope of his employment in extrahazardous industry were abolished except for such certain statutory causes of action as were specifically created by the workmen's compensation statute. The act, therefore, is all conclusive with no right to proceed outside of its bounds unless the statute specifically bestows such a right.
>
> The right to proceed against another not in the same employ is set forth in RCW 51.24 which grants an election to take under the title or seek a remedy against the negligent third party. If the workman elects to proceed against a negligent third party, the department is subrogated to the rights of the workman against such third party recovery, to the extent of compensation payments made under Title 51.
>
> . . . The statute is plain—it states that all civil causes of actions for personal injuries are abolished except as provided in Title 51. A civil cause of action against the state for negligence in the performance of safety inspections has not been provided in that title.

*Loger v. Washington Timber Prods., Inc., supra* at 927–28. We then stated:

> We hold the responsibilities of the safety division of the Department of Labor and Industries and the resources available to the division up to this light and conclude that their performance of safety inspections in the thousands of working places where extrahazardous work is performed is done in the exercise of judgment and discretion. The state is, therefore, immune from tort

liability for faulty performance or nonperformance of the activity.

*Loger v. Washington Timber Prods., Inc., supra* at 931.

In *Nerbun,* it was uncontroverted that the State's safety inspectors were unaware that an unauthorized construction procedure was being used. Nevertheless, the plaintiff there attempted to extend liability to the State on the theory that the pertinent inspection statutes imposed "an absolute duty" upon the State. The court rejected plaintiff's assertion and stated:

> In the instant case, the contractor, without notice to or approval of defendants, changed his method of demolition in the course of 3 days. We do not believe the legislature intended to impose an absolute duty upon the Department of Labor and Industries to insure a safe place for workmen to be employed. The most the legislature intended was that the department prescribe safety standards and secure some reasonable compliance through spot check inspections. In this way the safety conditions for workmen in general would be improved. The relatively small staff provided for the department is indication of this legislative intent.

*Nerbun v. State, supra* at 376.

The *Campbell* case, cited by the plaintiffs as authority for the proposition that *Loger* and *Nerbun* were overruled, faced a different situation than that faced here or in *Loger* and *Nerbun.* In discussing the *Loger* and *Nerbun* cases, the Supreme Court in *Campbell* explicitly stated:

> These cases, therefore, are clearly distinguishable from the instant situation where an *inspection was in fact carried out,* a highly dangerous condition was found to exist, and the ministerial or operational remedies dictated by the City's electrical code were not performed, *i.e.,* severing the electrical connection and/or disconnecting the service if the condition was not corrected within 60 days.

(Italics ours.) *Campbell v. Bellevue, supra* at 9. Further, the court pointed out that in contrast to *Loger* and *Nerbun,* its holding in *Campbell* dealt only with situations "where a relationship exists or has developed between an injured

plaintiff and agents of the municipality creating a duty to perform a mandated act for the benefit of particular persons or class of persons". *Campbell v. Bellevue, supra* at 10. While *Campbell* went on to find the City of Bellevue liable due to the electrical inspector's negligence, the holdings in *Loger* and *Nerbun* were not overruled.

■ Here, while plaintiffs have alleged that inspectors at *other* EXCOA facilities showed a failure by EXCOA to comply with state safety standards, the plaintiffs admitted that the responsible state safety inspector for this particular explosives manufacturing site had not seen the Raging River test site, and on the date of the explosion was still awaiting word from EXCOA that the plant was ready for final inspection. As a result, the inspector here, similar to the inspectors in *Loger* and *Nerbun* but contrary to the one in *Campbell,* had not been alerted to the existence of any noncomplying explosive manufacturing procedures at the site of the accident.[1] Since pursuant to the pertinent provisions of RCW 70.74.110 the inspector was under no mandatory duty at the time of the accident, we hold that under Title 51 the plaintiffs are barred from suing the State.

*Wilson v. State and EXCOA. Was the complaint of plaintiff for wrongful death wrongfully dismissed on the basis that plaintiff had failed to file a notice of claim against the State within 120 days?*

The plaintiff Wilson asserts that the dismissal of her complaint due to a failure to file a claim prior to filing suit was error. She bases this assumption on both a claim of estoppel and the reasoning behind the holding in *Hunter v.*

---

[1]The pertinent provision of RCW 70.74.110 reads:

The department of labor and industries shall *as soon as may be* after receiving such application cause an inspection to be made of the explosives manufacturing plant, and if found to be in accordance with RCW 70.74.030 and 70.74.050 and RCW 70.74.061, such department shall issue a license to the person applying therefor showing compliance with the provisions of this chapter, . . .

(Italics ours.) Plaintiffs made no allegation that this statute was not complied with.

*North Mason High School & School Dist. 403,* 85 Wn.2d
810, 539 P.2d 845 (1975). We reject the contention.

■ To qualify for relief under a theory of equitable
estoppel, a party must show

> (1) an admission, statement, or act, inconsistent with the
> claim afterwards asserted; (2) action by the other party
> on the faith of such admission, statement, or act; and (3)
> injury to such other party arising from permitting the
> first party to contradict or repudiate such admission,
> statement, or act.

*Shafer v. State,* 83 Wn.2d 618, 623, 521 P.2d 736 (1974).
The plaintiff Wilson did not offer evidence of these ele-
ments beyond her initial general allegation, and as a result
fails to meet the test in *Shafer.*

The nonclaim statutes considered in *Hunter* required
that plaintiffs harmed by government misfeasance file a
claim a short time after the tort occurred and substantially
prior to the running of the period of limitations. This was
held in *Hunter* to "create two classes of tort–feasors, gov-
ernmental and nongovernmental, and grant the one a pro-
cedural advantage not available to the other", therefore
placing an arbitrary, unconstitutional burden on state
claimants. *Hunter v. North Mason High School & School
Dist. 403, supra* at 813, 818–19.

The trial court, in dismissing plaintiff Wilson's claim,
stated:

> THAT in Wilson v. Explosives Corporation of America,
> et al, King County Cause No. 771800, the State of
> Washington is hereby dismissed for failure of the plain-
> tiff to file a claim pursuant to RCW 4.92.100 and RCW
> 4.92.110.

RCW 4.92.110, claimed by the plaintiffs to have been
deemed unconstitutional in *Hunter,* reads as follows:

> 4.92.110 Tortious conduct of state—Presentment and
> filing of claim prerequisite to suit. No action shall be
> commenced against the state for damages arising out of
> tortious conduct until a claim has first been presented to
> and filed with the state auditor. The requirements of this

section shall not affect the applicable period of limitations within which an action must be commenced, but such period shall begin and shall continue to run as if no claim were required.

██ As is evident from its language, RCW 4.92.110 requires nothing more than the filing of a claim against the State sometime before the running of the statute of limitations. The constitutionality of this condition on suing the State was implicitly recognized in *Jenkins v. State*, 85 Wn.2d 883, 540 P.2d 1363 (1975), and may not be successfully attacked merely by pointing to the fact that such a claim filing requirement places a procedural barrier before state claimants that is not present for victims of private torts. As recently stated in *Haddenham v. State*, 87 Wn.2d 145, 149, 550 P.2d 9 (1976):

> Prior to the legislature's abolition of the doctrine of sovereign immunity, tort claimants had no right to sue the state. *Kelso v. Tacoma*, 63 Wn.2d 913, 390 P.2d 2 (1964); *Kilbourn v. Seattle*, 43 Wn.2d 373, 261 P.2d 407 (1953). The plaintiffs' right to sue the state for the state's tortious conduct is therefore a matter of legislative grace. *See* Const. art. 2, § 26. . . .
>
> It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it *may prescribe the terms and conditions on which it consents to be sued,* and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it.
>
> *Beers v. Arkansas*, 61 U.S. (20 How.) 527, 529, 15 L. Ed. 991 (1895); cited with approval in *Bailey v. School Dist. 49*, 108 Wash. 612, 185 P. 810 (1919).

(Italics ours.) The absence in RCW 4.92.110 of statutory classifications condemned in *Hunter* as lacking any "substantial or even rational" basis, saves it from the fate of

statutes containing such discriminatory classifications. *See Jenkins v. State, supra* at 888–90.

The dismissal of the plaintiff Wilson's complaint for failure to file a claim pursuant to RCW 4.92.110 is affirmed.

> *Peterick v. State. Do relevant issues of fact remain to be decided which would prevent the granting of summary judgment?*

■ The plaintiff Peterick contends that the granting of a summary judgment for the State where the State failed to meet plaintiff's allegations with factual affidavits was error. This contention is rejected. While we recognize that the party moving for a summary judgment has the burden of showing no genuine issue on a material fact exists, *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975), we also recognize that the purpose behind a motion for summary judgment pursuant to CR 56 is to "do away with useless trials on formal issues which cannot be factually supported, or, if factually supported, could not as a matter of law lead to a result favorable to the nonmoving party." *Burris v. General Ins. Co. of America,* 16 Wn. App. 73, 75, 553 P.2d 125 (1976). The granting of a summary judgment will be proper only where "the *pleadings,* affidavits, depositions or *admissions* on file show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." (Italics ours.) *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963); *Smith v. Acme Paving Co.,* 16 Wn. App. 389, 392, 558 P.2d 811 (1976). Here, the trial court found that whether or not the plaintiff Peterick could factually support her allegations against the State and state officials, these defendants, due to their prevailing on the questions involving landlord liability, the 2–year statute of limitations, and immunity from suit by virtue of RCW Title 51, were entitled to judgment as a matter of law, as no genuine issue as to any legally material fact was raised. The fact that the State and the state officials decided to rely on their pleadings and the admissions of the plaintiffs, instead of submitting affidavits,

is immaterial. The granting of a summary judgment in favor of the State and state officials is affirmed.

*Peterick and Wilson v. EXCOA and Rocket Research. (a) Were plaintiffs' affidavits sufficient to establish a prima facie case against the defendants preventing the granting of summary judgment for defendants? (b) Was the trial court required to specify the grounds for granting summary judgment?*

The plaintiffs assert that the granting of the defendants Rocket's and EXCOA's motion for summary judgment was error. They base this assertion on the claims that (1) their affidavits were sufficient to establish a prima facie case against defendants Rocket and EXCOA, (2) the defendants were unable to provide affidavits supporting their position, (3) the defendants actively interfered with the plaintiffs' investigation of the facts, and (4) the trial court failed to specify the grounds for the summary judgment. We disagree.

■■ In reviewing an order for summary judgment, an appellate court engages in the same inquiry as does the trial court. *Highline School Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). We recognize that the purpose of a motion for summary judgment pursuant to CR 56 is to examine the sufficiency of the evidence behind the plaintiff's formal allegations in the hope of avoiding unnecessary trials where no genuine issue as to material fact exists. *Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974); *Barovic v. Cochran Elec. Co.,* 11 Wn. App. 563, 524 P.2d 261 (1974). A material fact is one upon which the outcome of the litigation depends in whole or in part. *Morris v. McNicol, supra; Amant v. Pacific Power & Light Co.,* 10 Wn. App. 785, 520 P.2d 181 (1974). The motion will be granted only if after viewing all the pleadings, affidavits, depositions, admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party, it can be said (1) that there is no genuine issue as to any material fact,

(2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgment as a matter of law. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975); *Wilber Dev. Corp. v. Les Rowland Constr., Inc.,* 83 Wn.2d 871, 523 P.2d 186 (1974); *McDonald v. Murray,* 83 Wn.2d 17, 515 P.2d 151 (1973); *Ciminski v. Finn Corp.,* 13 Wn. App. 815, 537 P.2d 850 (1975). A nonmoving party attempting to preclude a summary judgment may not rely on speculation, argumentative assertions that unresolved factual matters remain, or in having its affidavits considered at their face value, for upon the submission by the moving party of adequate affidavits the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists. *American Linen Supply Co. v. Nursing Home Bldg. Corp.,* 15 Wn. App. 757, 551 P.2d 1038 (1976); *Ashwell–Twist Co. v. Burke,* 13 Wn. App. 641, 536 P.2d 686 (1975); *Bates v. Grace United Methodist Church,* 12 Wn. App. 111, 529 P.2d 466 (1974); *Blakely v. Housing Auth.,* 8 Wn. App. 204, 505 P.2d 151 (1973).

Here, in addition to the admissions, depositions, and pleadings, the defendants filed over 20 affidavits in support of their motions for summary judgment. These affidavits adequately support the legal positions of the defendants and, as a result, the plaintiffs were required to set forth sufficient specific facts to rebut these affidavits. The plaintiffs failed to meet this burden.

 The claim concerning interference in the investigation of the facts by defendants' counsel was remedied by the trial court. The plaintiffs now contend, however, that the remedial action taken by the trial court was insufficient. As the plaintiffs failed to present this argument below, we will not consider it here. *See State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 313, 553 P.2d 423 (1976); *Meeks v. Marx,* 15 Wn. App. 571, 578, 550 P.2d 1158 (1976).

The final contention on this issue, that of the trial court's failure to specify the grounds for the summary judgment, is also rejected. The trial court in its oral opinion stated, "I don't think that the plaintiffs have shown relevant facts upon which they can recover." Further, in the order granting the summary judgment in favor of defendants, the trial court not only set out an extensive list of the papers considered, but also explicitly stated "that there is no genuine issue as to any material fact relating to liability of each of the above–named defendants." No more specificity on the granting of a summary judgment is required.

*Peterick and Wilson v. EXCOA and Rocket Research. Was summary judgment wrongfully granted in favor of the defendant Rocket Research and its officers, directors and employees because of claimed separate acts of deliberate and negligent misconduct by each?*

The plaintiffs assert that the defendant Rocket and its officers and directors (1) were aware of Astrolite's unstable and dangerous nature; (2) had knowledge of the primitive conditions under which EXCOA was manufacturing the explosives; and (3) maintained complete control over EXCOA's operations. On the basis of these assertions the plaintiffs argue for the extension of liability to defendant Rocket's officers and directors individually, and to the defendant Rocket itself.

 The general rule on the personal liability of corporate officers and directors for tortious acts committed by them or an officer or agent of the corporation has been stated as follows:

A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong. Accordingly, directors not parties to a wrongful act on the part of other directors are not liable therefor. . . .
 . . .

Ordinarily, a director is not liable for the tortious acts of officers, agents, or employees of the corporation, unless he participated therein or authorized the wrongful act. It is held that directors cannot be held liable for the acts of subordinate officers which they neither participated in nor sanctioned, and where they could not, in the exercise of ordinary and reasonable supervision, have detected the wrongdoing of such subordinate officers. So too, the president is not personally liable because of his official capacity, any more than are the directors or stockholders, for torts committed by the corporation, in the absence of personal participation in the tortious act. As an agent he is not liable for the acts of misfeasance or nonfeasance of his subordinate agents or employees.

(Footnotes omitted.) 19 Am. Jur. 2d *Corporations* §§ 1382, 1383 (1965).

In *Downey v. Callery,* 338 So. 2d 937 (La. Ct. App. 1976), an employee had been seriously injured when the raw material for a drug that he was processing in the defendant's plant suddenly exploded and burned. The plaintiff's attempts to establish liability on the part of corporate officers and directors due to their alleged failure to warn him of the explosiveness and combustibility of the substance, or to maintain safe facilities, were unsuccessful, for the court held:

[I]t must be shown that Callery has breached this duty through personal fault and not merely through technical or vicarious fault, and with regard to personal fault, personal liability cannot be imposed upon Callery simply because he was president; he must have a personal duty toward plaintiff which specifically caused plaintiff's injury.

*Downey v. Callery, supra* at 943.

Here, sufficient specific facts have not been shown by the plaintiffs to rebut the defendants' answer that it was EXCOA, *not* Rocket, that controlled the Raging River test site premises. Rocket, as the parent corporation, owed no duty to the plaintiffs' decedents, who were EXCOA employees, and therefore cannot be held negligent. *See LaPlante v. State, supra* at 159. The plaintiffs also failed

to show that the named officers and directors of Rocket knowingly and actively participated in, cooperated in, or directed that an agent perform the act that served as the catalyst to the explosion. Without a showing of active individual involvement by the officers and directors, there can be no liability on their part. *Johnson v. Harrigan–Peach Land Dev. Co.,* 79 Wn.2d 745, 753, 489 P.2d 923 (1971); *see Teledyne Indus., Inc. v. Eon Corp.,* 401 F. Supp. 729, 736–37 (S.D.N.Y. 1975), *aff'd,* 546 F.2d 495 (2d Cir. 1976); *Cahill v. Hawaiian Paradise Park Corp.,* 56 Haw. 522, 543 P.2d 1356, 1360 (1975).

*Peterick and Wilson v. EXCOA and Rocket Research. Was the defendant Rocket Research liable for the tortious acts of its subsidiary, Explosives Corporation of America, and an employee of its subsidiary, preventing the granting of summary judgment in its favor?*

The plaintiffs next attempt to extend liability to Rocket on the interrelated theories of lack of separate corporate identity and respondeat superior. The plaintiffs base this argument on the contention that Rocket so totally dominated EXCOA that the trial court should have disregarded EXCOA's corporate identity, thereby holding Rocket responsible for the safety of the premises and for the actions of EXCOA's employees.

It is said that "a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears". 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 41 (rev. ed. 1974). When the continued recognition of the corporate identity would not be in the interest of justice, however, it will be disregarded. Circumstances under which it might be proper to disregard the corporate entity in parent–subsidiary cases, such as the one before us, was discussed in 14 Wash. L. Rev. commencing at page 292, as follows:

In parent and subsidiary corporation cases, a most important field for invoking the doctrine, there must be

more than mere stockholder control of the entity sought to be disregarded. There must be what may be best denoted as *manipulation.* Thus, in addition to the usual elements of common stockholders, directors and officers, the following facts have been relied on: Excessive financing by the parent of the subsidiary corporation; payment of the subsidiary's expenses and losses by the parent; use by the parent of the subsidiary's property as his or its own; description by the parent of the subsidiary as a part of its business; the acts of the subsidiary in the interest of the parent, rather than its own interest; the fact that the subsidiary has no business except with a parent corporation, and no assets except those conveyed to it by the parent corporation; the fact that formal legal requirements such as meetings, elections, and separate bookkeeping devices are not observed by the subsidiary.

(Footnotes omitted.) Horowitz, *Disregarding the Entity of Private Corporations,* 14 Wash. L. Rev. 285, 292–93 (1939).

 The plaintiffs here show only the fact that a parent–subsidiary relationship existed between Rocket and EXCOA. There are no allegations nor has evidence been offered that shows that the plaintiffs were misled or defrauded. Such a showing fails to evidence either the requisite manipulation, or the perpetration of a fraud on plaintiffs. *See Rena–Ware Distribs., Inc. v. State,* 77 Wn.2d 514, 518, 463 P.2d 622 (1970); *J.I. Case Credit Corp. v. Stark,* 64 Wn.2d 470, 475, 392 P.2d 215 (1964). *See also* Annot., 7 A.L.R.3d 1343, 1374 (1966). Having failed to show that Rocket and not EXCOA was the dominant entity controlling the employees and operations at the Raging River test site, or that the recognition of EXCOA as a separate entity would aid in the perpetration of a fraud on plaintiffs, the plaintiffs' contention that Rocket is liable both for EXCOA's and its employees' tortious acts, must be rejected.

*Peterick and Wilson v. EXCOA and Rocket Research. Was summary judgment wrongfully granted in favor of the defendant, James Mars, claimed to have not been an employee of EXCOA?*

The plaintiffs assert that James Mars is liable individually and that he was under the exclusive control of Rocket, not EXCOA, at the time of the accident and therefore is not immune from suit. The plaintiffs base this assertion on the allegation that Mars (1) was paid by Rocket; (2) did not leave Rocket's employ while working for EXCOA; (3) had previously inspected EXCOA's sites as a representative of Rocket; and (4) took orders from EXCOA officers and directors, who were also officers and directors of Rocket. We disagree.

As stated in *United States v. N.A. Degerstrom, Inc.*, 408 F.2d 1130, 1133 (9th Cir. 1969):

> The critical factual inquiry in determining whether the loaned–servant doctrine should be applied is the location of the power to control the servant.

*See also* Restatement (Second) of Agency §§ 220(2), 227 (1957). Although the question of control or right to control is usually one of fact for the jury, it has been held that

> [i]f the facts are undisputed, as in this case, and, without weighing the credibility of witnesses, there can be but one reasonable conclusion drawn from the facts, the nature of the relationship between the parties becomes a question of law.

*Baxter v. Morningside, Inc.*, 10 Wn. App. 893, 898, 521 P.2d 946 (1974).

In discussing the plaintiffs' argument on this issue, the trial court stated:

> As to Mr. James Mars, on the record there is a dispute, a factual dispute, but it only goes to why he was unwilling to terminate his employment with Rocket Research. He clearly was an employee of Rocket Research. I think it is admitted he was on loan.
> In any event, there is no material dispute of fact about that. There is no material dispute as to whether he was on loan. There is a question, I think it is irrelevant, as to why he was unwilling to terminate his employment with Rocket; and therefore, summary judgment should be granted in his behalf.

The plaintiffs do not present evidence to show that Mars was *not* under the exclusive control of EXCOA. The evidence with regard to this issue is not material to the crucial question of control. Under these circumstances, the trial court was correct in deciding the loaned–servant question as a matter of law and in rejecting the plaintiffs' contention that Mars was individually liable.

> *Peterick and Wilson v. EXCOA and Rocket Research. Was summary judgment wrongfully granted in favor of EXCOA and certain of its employees in the face of plaintiffs' assertions of intentional misconduct?*

The plaintiffs contend that when the officers and directors of EXCOA embarked on a course of conduct, which the plaintiffs described as an intentional evasion and violation of state safety standards, these officers and directors intentionally injured plaintiffs' decedents.

The pertinent statute on this issue reads as follows:

> Action against employer for intentional injury. If injury or death results to a workman from the *deliberate intention* of his employer to produce such injury or death, the workman, surviving spouse, child, or dependent of the workman shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any excess of damages over the amount received or receivable under this title.

(Italics ours.) RCW 51.24.020.

The question as to what amounts to injury from a "deliberate intention" has been met in a number of recent cases. In *Winterroth v. Meats, Inc.,* 10 Wn. App. 7, 9, 516 P.2d 522 (1973), the plaintiff claimed the cause of his injury was directly attributable to the fact that his employer "knowingly failed and refused to comply with the correction measures issued by the Department of Labor and Industries," and that such actions amounted to aggravated, serious and willful misconduct, thereby fitting within the

"deliberate intention" statutory exception. The opinion stated:

> The phrase "deliberate intention of his employer to produce such injury" now contained in RCW 51.24.020 has been part of the industrial insurance act from its inception. Laws of 1911, ch. 74, § 6; Laws of 1919, ch. 131, § 5; Laws of 1927, ch. 310, § 5; Laws of 1957, ch. 70, § 24; Laws of 1961, ch. 23, § 51.24.020, now RCW 51.24-.020. The phrase was construed in prior Washington cases beginning as long ago as 1922. *Biggs v. Donovan–Corkery Logging Co.,* 185 Wash. 284, 54 P.2d 235 (1936), discussing *Delthony v. Standard Furniture Co.,* 119 Wash. 298, 205 P. 379 (1922), and *Perry v. Beverage,* 121 Wash. 652, 209 P. 1102, 214 P. 146 (1922).
>
> . . .
>
> The phrase "serious and willful misconduct" is not necessarily equivalent to "deliberate intention of his employer to produce such injury." RCW 51.24.020. One may be guilty of serious and willful misconduct by knowingly refusing to comply with a statute or rule intended to protect a workman without necessarily having a "deliberate intention to produce such injury" to the employee. The phrase "serious and willful misconduct" may even be sufficient to constitute constructive intention. Constructive intention, however, is not the same as an actual and "specific intent" to injure. *See* J. Salmond, *Jurisprudence* § 89 (12th ed., P. Fitzgerald 1966). Byron Horton's affidavit in support of the motion for summary judgment denied any specific intent to injure plaintiff or to produce the injury which plaintiff sustained. The denial made a prima facie case, casting upon the plaintiff the necessity of making a showing of the facts upon which he relied to establish the specific intent to injure required. *Washington Osteopathic Medical Ass'n v. King County Medical Serv. Corp.,* 78 Wn.2d 577, 478 P.2d 228 (1970); *W.G. Platts, Inc. v. Platts,* 73 Wn.2d 434, 438 P.2d 867, 31 A.L.R.3d 1413 (1968); *Almy v. Kvamme,* 63 Wn.2d 326, 387 P.2d 372 (1963); Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1, 13–15 (1970). Plaintiff's showing, however, was insufficient to establish at least prima facie that defendant had the specific intent

required by the statute to produce the injury of which plaintiff complains.

*Winterroth v. Meats, Inc., supra* at 11–13.

In a later case, an employee claimed that his employer took inadequate precautions to protect him from injury and in doing so acted with knowledge that its actions were substantially certain to produce injury. Such knowledge was said to constitute the requisite "deliberate intention." This assertion was rejected on the ground that the employee had failed to show that his employer "had the *specific intent* to injure." *Higley v. Weyerhaeuser Co.,* 13 Wn. App. 269, 271, 534 P.2d 596 (1975).

More recently, in *Foster v. Allsop Automatic, Inc.,* 86 Wn.2d 579, 547 P.2d 856 (1976), the court reaffirmed the stand taken in the *Winterroth* and *Higley* opinions. After examination of the statutory and precedential foundations of those two decisions, the court stated:

> Affidavits of defendant's supervisory employees submitted in support of the motion for summary judgment denied any intent to injure plaintiff. This denial made a prima facie case and cast upon plaintiff the necessity of showing facts establishing "deliberate intention." *Washington Osteopathic Medical Ass'n v. King County Medical Serv. Corp.,* 78 Wn.2d 577, 478 P.2d 228 (1970). From our review of the affidavits submitted, we find that plaintiff has not submitted facts from which a reasonable inference could be drawn that defendant possessed the specific intent to produce injury required by the statute.

*Foster v. Allsop Automatic, Inc., supra* at 584.

Here, the plaintiffs' allegations of calculated evasionary conduct in violation of recognized safety standards, even if taken as true, failed to meet the burden set forth in *Winterroth, Higley* and *Foster.* The plaintiffs have not produced evidence that the employer had a specific intent to injure the decedents, and therefore they cannot claim that their cases come within the statutory exception of RCW 51.24.020.

*Peterick and Wilson v. EXCOA and Rocket Research. Was summary judgment wrongfully granted in favor of the officers and directors of EXCOA claimed to have not been in the same employ as the plaintiff and claimed to have been responsible for the explosion as officers and directors of Rocket Research?*

The plaintiffs also attempt to establish individual liability on the part of certain named officers and directors of EXCOA on the ground that these people were "not in the same employ," and by this theory avoiding the implicit prohibition in RCW 51.24.010 against suing a fellow employee for injuries suffered while on the job. The plaintiffs state that the officers and directors of EXCOA would not be in the "same employ" by reason of (1) their not being reported as employees; (2) their not being at or engaged in work at the Raging River test site at the time of the accident; and (3) their also being officers and directors of Rocket.

It is implicit in the legislature's inclusion of a provision in RCW 51.24.010 allowing a workman injured in the course of his employment by the "negligence or wrong of another not in the same employ" to elect to sue that person, that the legislature intended that one *in* the "same employ" would *not* be susceptible to suit. Had the legislature desired to include provisions stating that one in the same employ might be sued if he or she were (1) not engaged in work at the site of the injury; (2) officers or directors of the corporation involved who were not reported as employees; or (3) officers or directors of more than just the corporation involved, it could have done so. The statutory language, however, does not include qualifications to the "same employ" terminology. EXCOA's officers and directors were in the "employ" of EXCOA in any event. It being established that (1) the plaintiffs' decedents were employed by EXCOA, and (2) that the officers and directors against whom the plaintiffs seek liability were officers and directors of EXCOA at the time of the accident, we

hold that the named officers' and directors' status as officers and directors of EXCOA does not impair or weaken their immunity from suit under the "same employ" provision of RCW 51.24.010. *See also Witherspoon v. Salm,* 251 Ind. 575, 243 N.E.2d 876, 878 (1969); *Pettaway v. McConaghy,* 367 Mich. 651, 116 N.W.2d 789, 791 (1962); *Warner v. Leder,* 234 N.C. 727, 69 S.E.2d 6, 9 (1952); *Jadosh v. Goeringer,* 442 Pa. 451, 275 A.2d 58, 60 (1971).

> *Peterick and Wilson v. EXCOA and Rocket Research. Was summary judgment wrongfully granted in favor of EXCOA and Rocket because of the claimed existence of a conspiracy between the two?*

 The plaintiffs say that EXCOA and Rocket conspired (1) to conceal the known dangers of Astrolite from the plaintiffs' decedents, and (2) to cover up the cause of the accident and thereby injure plaintiffs. It was stated in *Corbit v. J.I. Case Co.,* 70 Wn.2d 522, 528–29, 424 P.2d 290 (1967):

> [T]hat an actionable civil conspiracy exists if two or more persons combine to accomplish an unlawful purpose or combine to accomplish some purpose not in itself unlawful by unlawful means. *Lewis Pac. Dairymen's Ass'n v. Turner,* 50 Wn.2d 762, 314 P.2d 625 (1957); *Harrington v. Richeson,* 40 Wn.2d 557, 245 P.2d 191 (1952); *Kietz v. Gold Point Mines, Inc.,* 5 Wn.2d 224, 105 P.2d 71 (1940). In order to establish a conspiracy the plaintiff must show that the alleged coconspirators entered into an *agreement* to accomplish the object of the conspiracy. *Lewis Pac. Dairymen's Ass'n v. Turner, supra.* Even more important, the plaintiff has the burden of preponderating the evidence; and furthermore, the existence of an alleged civil conspiracy must be established by *clear, cogent,* and *convincing* evidence. *Harrington v. Richeson, supra.*
>
> . . .
> . . . The test of the sufficiency of the evidence to prove a conspiracy is that the circumstances must be inconsistent with a lawful or honest purpose and reasonably consistent *only* with the existence of the conspiracy. *Couie v.*

*Local 1849 United Bhd. of Carpenters & Joiners of America*, 51 Wn.2d 108, 316 P.2d 473 (1957).

Here, the plaintiffs' showing that sabotage was initially offered by the defendants as a cause of the explosion fails to establish a conspiracy by clear, cogent and convincing evidence. We find no evidence of an agreement between EXCOA and Rocket to fabricate the cause of the accident in order to harm the plaintiffs. EXCOA's and Rocket's actions in postulating causes during their post–explosion investigation failed to point to the furtherance of a conspiracy. We conclude that the trial court was correct in dismissing this claim as a matter of law.

*Peterick and Wilson v. EXCOA and Rocket Research. Was Rocket strictly liable under a theory of product liability for the explosion of the Astrolite?*

The plaintiffs claim that Rocket is strictly liable for the plaintiffs' decedents' deaths under a theory of product liability. The plaintiffs base this assertion on the allegations that Rocket (1) discovered and designed Astrolite; (2) put Astrolite on the market and promoted it; (3) maintained a close connection with its manufacture; (4) represented Astrolite as being safe; and (5) failed to give adequate warnings of its inherent danger. These contentions are rejected.

The initial limitation of all such actions requires the common denominator of a manufacturer or seller. *See Seattle–First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 148–49, 542 P.2d 774 (1975); W. Prosser, *Law of Torts* § 100, at 663–65 (4th ed. 1971). Here, it is uncontroverted that (1) in 1966 Rocket formed a subsidiary corporation to develop and manufacture explosives, including Astrolite, and (2) that the officers, directors and supervisory personnel employed and directly controlled by EXCOA knew of the substance's volatile character. The facts alleged by plaintiffs fail to establish either that Rocket was the manufacturer, or that Rocket had any duty to warn plaintiffs' decedents of dangers that officials in EXCOA were aware

of. The plaintiffs have failed to show any causal link between the explosion and acts or omissions of Rocket. The plaintiffs did not produce evidence to rebut the defendant Rocket's denial of control in the manufacturing process or its denial of any duty to warn plaintiffs' decedents, and the claim properly was dismissed. *Cf. Nelson v. Brunswick Corp.,* 503 F.2d 376, 378–79 (9th Cir. 1974); *Texaco, Inc. v. Standard,* 536 S.W.2d 136 (Ky. Ct. App. 1975); *Hercules Powder Co. v. Hicks,* 453 S.W.2d 583, 587 (Ky. Ct. App. 1970). *See also* Annot., 80 A.L.R.2d 488, 558–61 (1961).

Granting of each of the summary judgments of dismissal is affirmed.

Petitions for rehearing denied February 16, 1978.

Review denied by Supreme Court October 20, 1978.