IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| R.N., individually, J.W., individually, and S.C., individually, | No. 53957-8-II |
| Appellants, | |
| v. | |
| KIWANIS INTERNATIONAL, a non-profit entity; KIWANIS PACIFIC NORTHWEST DISTRICT, a non-profit entity; KIWANIS OF TUMWATER, a non-profit corporation; KIWANIS OF CHEHALIS, a non-profit entity; KIWANIS OF GRAND-MOUND ROCHESTER, a non-profit entity; KIWANIS OF GRAND-MOUND, a non-profit entity; KIWANIS OF ROCHESTER, a non-profit entity; KIWANIS OF CENTRALIA, a non-profit entity; KIWANIS OF CENTRALIA-CHEHALIS, a non-profit entity; CHARLES McCARTHY, an individual; GUY CORNWELL, an individual; LEE COUMBS, an individual; SAM C. MOREHEAD, an individual; EDWARD J. HOPKINS, an individual; LEWIS PATTON, an individual; HENRY MEISTER, an individual; B. DALE SHANNON, an individual; KIWANIS OF CHEHALIS, a non-profit corporation, | PUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — RN, JW, and SC allege they were sexually abused as children in a group home in Centralia between 1989 and 1991. Lewis County Youth Enterprises (LCYE), a non-profit corporation doing business as Kiwanis Vocational Homes for Youth (KVH), operated the group home. LCYE was administratively dissolved in 2010.

Between 2015 and 2018, RN, JW, and SC sued LCYE, Kiwanis International and other related Kiwanis corporate entities, Washington State, and several corporate directors and officers, alleging negligence and asserting that their claims were not barred by the statute of limitations under the special discovery rule for victims of sexual abuse. In separate motions, the trial court granted summary judgment dismissals of all claims against LCYE and the individually named directors and officers of LCYE, ruling that RCW 23B.14.340, the corporate survival statute, barred all claims against them.

We hold that the corporate survival statute bars RN, JW, and SC's claims against LCYE, and affirm summary judgment dismissal as to the dissolved corporation, but we remand to the trial court to review liability as to the individual defendants.

FACTS

I. BACKGROUND

Lewis County Youth Enterprises (LCYE) was a Washington non-profit corporation, doing business as Kiwanis Vocational Homes for Youth (KVH). LCYE was incorporated in 1986. KVH operated a group care facility for boys in Centralia, which received state funding for the boys placed there. Charles McCarthy was the executive director of KVH. Lewis Patton, Sam Morehead, Lee Coumbs and Edward Hopkins were all on the board of directors of LCYE. B. Dale Shannon was a lieutenant governor of Kiwanis Pacific Northwest District, a Kiwanis related entity. Guy Cornwell was executive director of KVH for a short period in 1991, and was employed by KVH as "Director of Youth Care" between 1986 and 1991. Clerk's Papers (CP) at 1911.

2

In addition to their positions on the board of directors at LCYE, Coumbs, and Hopkins were also employees of KVH. Coumbs was a head teacher and principal for a period of five years at the private school operating on the KVH campus. In 1990, Hopkins was employed as a janitor, and also volunteered as principal at the private school. Hopkins lacked any qualifications to teach primary or secondary education. Hopkins also worked as a contractor for the Department of Labor & Industries (DLI) where he was responsible for finding alternative work for DLI recipients. Hopkins stopped working at KVH when he was arrested and charged with conspiracy to commit murder in 1990. LCYE was administratively dissolved in 2010.

## II. ALLEGATIONS OF ABUSE[1]

In 1987, McCarthy hired John and Peggy Halverson as independent contractors to "look to the physical and emotional needs of the youths" and to act as "teaching family parents on a daily basis" at the KVH campus. CP at 3011-12. As part of their job as teaching family parents, the Halversons lived on the property with the boys in their care. John was responsible for caring for the youths who were assaultive or who engaged in "more acting out."[2] CP at 3944. McCarthy hired the Halversons despite the fact that Peggy had a documented history of abusing her own minor child in 1982. Peggy had lost custody of her child, and her visitation plan required her to attend therapy to learn parenting skills and practices focusing on non-physical parenting modalities. Peggy discontinued therapy in 1984 against clinical advice.

---

[1] Because the trial court granted summary judgment dismissal of all claims, we describe the facts in the light most favorable to the appellants. *Rocha v. King*, 195 Wn.2d 412, 419, 460 P.3d 624 (2020).

[2] We use the Halversons' first names for clarity.

Between 1988 and 1990, there were numerous reports that John physically assaulted boys at KVH. In 1989, John became intoxicated and physically assaulted a boy. Despite these reports, McCarthy did not terminate John's employment.

The Halversons assaulted multiple children who were assigned to live with them at KVH. In 1989, the Halversons repeatedly sexually abused and raped RN. In 1989, the Halversons sexually abused and raped JW. From 1988 to 1989, the Halversons repeatedly sexually abused and raped SC and his younger brother.

In 1990, John physically assaulted another boy, which resulted in an investigation by the Department of Social and Health Services (DSHS), Child Protective Services (CPS) and a criminal referral to the Lewis County Sheriff's office. After the 1990 assault allegation came to the attention of CPS, McCarthy removed John as a teaching family parent and made him the director of the school. CPS concluded that the allegations of assault were substantiated, and ordered that John immediately vacate the premises and cease all participation with the group home. McCarthy then purportedly terminated John, but John remained on KVH's payroll and continued to work offsite.

In 1991, the DSHS Office of Special Investigations opened an investigation of KVH after receiving an anonymous tip. That investigation found that McCarthy had physically abused boys in his care, ordered staff to falsify documents and records, altered credentials of staff to appear in compliance with state law, misappropriated funds from and defrauded state and federal programs, and failed to report numerous criminal acts to law enforcement including a rape of a child. The report also found that Hopkins was responsible for placing DLI recipients at KVH in a conflict of interest with his contract at DLI, and that none of the DLI recipients placed at KVH

received any promised training and were not qualified to work at the group home. Shortly thereafter, John Halverson was terminated and McCarthy resigned.

### III. LAWSUIT AND MOTIONS FOR SUMMARY JUDGMENT

A. *2015 Complaint and First Amended Complaint*

In 2015, RN sued LCYE, other related corporate entities,[3] and the State. RN alleged that LCYE and the related entities had engaged in (1) negligent supervision and monitoring of care of the boys; (2) negligent failure to investigate, intervene, and report misconduct to authorities; (3) negligent failure to provide basic services, including simple support, care, education, and protection for the boys from emotional and physical injuries and sexual exploitation, and (4) negligent hiring, retention, and supervision of employees and agents. JW and SC joined the lawsuit in the first amended complaint. RN, JW, and SC alleged that LCYE and the other Kiwanis related entities' negligence proximately and directly caused permanent emotional, mental, and physical injuries to them.

LCYE moved for summary judgment, arguing that the claims against them were barred under RCW 23B.14.340 because the claims were not brought within three years of its corporate dissolution as required by that statute. In response, RN, JW, and SC argued that the court should harmonize RCW 23B.14.340 with the statute of limitations and the discovery rule applicable to childhood sexual abuse claims. On April 7, 2017, the trial court granted LCYE's motion for summary judgment dismissal, ruling that RCW 23B.14.340 barred the claims because they were filed more than three years after the corporate dissolution.

---

[3] Those other related corporate entities were Kiwanis, a non-profit corporation; Kiwanis Vocational Home, a non-profit corporation; Kiwanis of Tumwater, a non-profit corporation; and Kiwanis of Pe Ell, Lewis County, Washington, a non-profit corporation.

B.      *2018 Second Amended Complaint*

In 2018, RN, JW, and SC filed a second amended complaint that added individual defendants McCarthy, Cornwell, Coumbs, Morehead, Hopkins, Patton, Meister, and Shannon. The second amended complaint included negligence claims based on the defendants' duty arising out of a special relationship with the children. The complaint included allegations that the defendants negligently hired, trained and supervised its caseworkers and employees. The complaint also alleged new causes of action of outrage, negligent infliction of emotional distress, and intentional infliction of emotional distress.

On September 4, Patton moved for summary judgment on the claims against him. On October 4, RN, JW, and SC moved to amend their complaint again. At this point, the trial was set for July 12, 2019. The proposed third amended complaint did not seek to add new causes of action, but included additional factual allegations about the scope of Morehead's, Hopkins's, Patton's, Meister's, and Shannon's duties as to LCYE, KVH and Kiwanis-related entities. Whereas the second amended complaint merely listed the named individuals as directors, board members, and employees, the proposed third amended complaint specifically listed particular actions and responsibilities of each person. The proposed complaint alleged that these specific individual defendants acted negligently within the scope of their positions. On October 8, RN, JW, and SC filed a response in opposition to Patton's motion for summary judgment.

Morehead, Hopkins, and Patton also filed a memorandum opposing the motion to amend the complaint, arguing that RN, JW, and SC unreasonably delayed in bringing their amendments, the amendments were not based on any new information, and any amendments after Patton's motion for summary judgment would be prejudicial. At the hearing on the motion to amend,

6

RN, JW, and SC explained that the proposed third amended complaint did not allege any new causes of action, and the second amended complaint had already alleged actions for intentional torts for which the individuals would be personally liable. The trial court denied the motion to amend, stating that the motion was late and prejudiced the defendants in light of the pending summary judgment motion and the case schedule.

On October 19, the trial court granted Patton's motion for summary judgment dismissal, ruling that RCW 23B.14.340 barred the claims against him personally. Then all the remaining individual defendants filed motions for summary judgment dismissal on the same basis. The trial court granted summary judgment dismissal for each individual defendant, ruling that RCW 23B.14.340 barred the claims against them.

RN, JW, and SC appeal the trial court's orders granting summary judgment dismissal of their claims against LCYE, Patton, Shannon, Hopkins, Morehead, McCarthy, Coumbs, and Cornwell, and denying their motion to file a third amended complaint.

ANALYSIS

RN, JW, and SC argue that RCW 4.16.340 (the statute of limitations tolling provision for torts involving child sexual abuse), extends the period set forth in RCW 23B.14.340 (the corporate survival statute). They also argue that the corporate survival statute has no effect on post-corporate-dissolution claims against individual directors, officers or employees for their individual tort liability. RN, JW, and SC further argue that the trial court abused its discretion when it denied RN, JW, and SC's motion to file a third amended complaint.

We hold that the trial court did not err when it dismissed the claims against LCYE because RCW 4.16.340 does not extend the period set forth in RCW 23B.14.340. This is

7

because the corporate survival statute is not a statute of limitations that can be tolled by a statute of limitations tolling provision. We also hold that the trial court erred when it dismissed the individual defendants without considering whether these defendants' actions subjected them to personal liability for their own torts. Finally, we hold that the trial court did not abuse its discretion when it denied RN, JW, and SC's motion to file a third amended complaint.

I. CORPORATE SURVIVAL AND THE CHILDHOOD SEXUAL ABUSE DISCOVERY RULE

RN, JW, and SC first argue that the trial court erred in dismissing their claims under the corporate dissolution survival of remedy statute rather than applying the discovery rule for childhood sexual abuse claims. RN, JW, and SC argue that there is an apparent conflict between these two statutes that this court must harmonize to hold that the discovery rule tolls the period to bring a claim notwithstanding an expiration of the remedy survival period. RN, JW, and SC argue that should this court find no apparent conflict, it should still hold that the childhood sexual abuse discovery rule controls.

LCYE, and the individual defendants argue that the trial court did not err because there is no conflict between the two statutes and all claims against the dissolved entity are barred because the remedy period expired. We agree with LCYE.

A.      *Standards of Review*

We review trial court orders granting summary judgment de novo, reviewing the facts before the trial court and all reasonable inferences therefrom in the light most favorable to the nonmoving parties. *Ballard Square Condo. Owners Ass'n v. Dynasty Constr. Co.*, 158 Wn.2d 603, 609, 146 P.3d 914 (2006). Summary judgment is appropriate only when there are no genuine issues of material fact and where reasonable minds could reach but one conclusion.

8

*Vargas v. Inland Washington, LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019); CR 56(c).

Whether a duty exists is a question of law for the court. *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 429, 378 P.3d 162 (2016).

B.      *Corporate Survival Statute and the Childhood Sexual Abuse Discovery Rule*

The two statutes we are asked to harmonize are RCW 23B.14.340, which generally provides that corporate dissolution does not "take away or impair" any remedy for a claim against it for a period of three years after the effective date of any dissolution, and RCW 4.16.340, which contains a specific discovery rule that tolls the statute of limitations for claims of childhood sexual abuse.

1.  *RCW 23B.14.340 – Corporate Survival Statute*

RCW 23B.14.340 states:

> The dissolution of a corporation either (1) by the filing with the secretary of state of its articles of dissolution, (2) by administrative dissolution by the secretary of state, (3) by a decree of court, or (4) by expiration of its period of duration shall not take away or impair any remedy available against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution or arising thereafter, unless action or other proceeding thereon is not commenced within two years after the effective date of any dissolution that was effective prior to June 7, 2006, or within three years after the effective date of any dissolution that is effective on or after June 7, 2006. Any such action or proceeding against the corporation may be defended by the corporation in its corporate name.

A corporation is a distinct legal entity, existing artificially in law, and maintaining its own legal obligations and interests separate from its officers, directors, employees, and other agents through whom it acts. *State v. Brelvis Consulting LLC*, 7 Wn. App. 2d 207, 215, 436 P.3d 818 (2019). At common law, when a corporation dissolved, it ceased to exist for all purposes and therefore could not be sued. *Ballard Square Condo. Owners Ass'n*, 158 Wn.2d at 609;

RCW 23B.14.340. That common law rule has been modified in most states by statutes generally known as survival statutes, which permit lawsuits to be filed against dissolved corporations for a limited period. *Ballard Square Condo. Owners Ass'n*, 158 Wn.2d at 609. RCW 23B.14.340 is such a survival statute, permitting lawsuits against dissolved corporations for a period of three years after the date of dissolution. RCW 23B.14.340 allows claims that would otherwise be extinguished by the dissolution of a corporation under the harsh application of the common law. But such a claim must be filed within a specific window of time or it is deemed extinguished.

2. *RCW 4.16.340 – Child Sexual Abuse Statute of Limitations*

In response to our Supreme Court's decision in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986), where the court declined to apply the common law discovery rule to toll the statute of limitations in a civil action for injuries caused by childhood sexual abuse, the Legislature codified such a rule under RCW 4.16.340. *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 706-07, 985 P.2d 262 (1999); Laws of 1988, ch. 144, § 2. RCW 4.16.340 states:

> (1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
>
> > (a) Within three years of the act alleged to have caused the injury or condition;
> >
> > (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
> >
> > (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:
>
> PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.
>
> . . . .

(4) For purposes of this section, "child" means a person under the age of eighteen years.

(5) As used in this section, "childhood sexual abuse" means any act committed by the defendant against a complainant who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect at the time the act was committed.

This tolling statute preserves remedies where the statute of limitations would otherwise bar claims for victims of childhood sexual abuse. *See* Laws of 1991, ch. 212, § 1 (finding that victims of sexual abuse may repress the memory of the abuse or be unable to connect the abuse to any injury until after the statute of limitations has run). Under RCW 4.16.340, until the victim is able to understand or make the connection between the childhood sexual abuse and the full extent of the resulting harm, the cause of action does not accrue or, if accrued, the running of the statute of limitations is tolled. *Cloud ex rel. Cloud v. Summers*, 98 Wn. App. 724, 735, 991 P.2d 1169 (1999).

3. *Childhood Sexual Abuse Tolling Provision Does Not Affect Corporate Survival Statute*

Survival statutes are distinct from statutes of limitation. George L. Blum, *Preservation, After Dissolution, of Remedy for or Against Corporation Under Corporate Survival or Winding Up Statute*, 36 A.L.R. 7th Art. 4 (2018). This is because corporate survival statutes act as statutes of repose to extinguish claims against dissolved corporations. *See Ballard Square Condo. Owners Ass'n*, 158 Wn.2d 603 16A WILLIAM MEADE FLETCHER & CAROL A. JONES, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 8144.20 (2012).

In an analogous situation, our Supreme Court rejected the proposition that a discovery rule tolls or extends the construction statute of repose. *Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988). In *Gevaart*, the court looked at the construction statute of

repose, which provides for a six-year window for an action to accrue following substantial completion of construction. *Gevaart*, 111 Wn.2d at 502; RCW 4.16.310. The builders completed Gevaart's condominium in August 1978. *Gevaart*, 111 Wn.2d at 502. In October 1981, Gevaart slipped and fell down the stairs. *Gevaart*, 111 Wn.2d at 500. In October 1984, she brought suit against the builder. *Gevaart*, 111 Wn.2d at 500. Our Supreme Court affirmed summary judgment dismissal, reasoning that although the action accrued in October 1981, the statute of repose period expired in August 1984. *Gevaart*, 111 Wn.2d at 500. Thus, no remedy was available to Gevaart by October 1984, even though she had filed her action before a three-year statute of limitations expired. *Gevaart*, 111 Wn.2d at 502.

Similarly, courts from other jurisdictions examining corporate survival statutes have overwhelmingly held that the survival of remedy period for a dissolved corporation cannot be extended by a statute of limitation's tolling provisions. *M.S. v. Dinkytown Day Care Ctr., Inc.*, 485 N.W.2d 587, 591 (S.D. 1992) (holding that South Dakota's corporate survival statute was not extended by tolling requirement for minors' claims where plaintiffs alleged childhood sexual abuse); *Kachler v. Taylor*, 849 F. Supp. 1503, 1513-14 (M.D. Ala. 1994) (holding that Alabama's corporate survival statute "acts as a limitation upon the capacity of the corporation to sue or be sued rather than as a statute of limitations" and therefore was not subject to tolling provisions); *Re v. Real Estate Lawyers Grp., PC*, 509 F. App'x 541, 542 (7th Cir. 2013) (holding that Illinois corporate survival statute was a statute of repose that did not allow for tolling of "even meritorious suits because of delay for which the plaintiff is not responsible"); *Indiana Nat'l Bank v. Churchman*, 564 N.E.2d 340, 344 (Ind. Ct. App. 1990) (holding that application of the Indiana corporate survival statute could not be estopped "because while a statute of

12

limitations operates on a claimant's remedy, a survival statute . . . gives breath to the substantive right itself.").

RN, JW, and SC cite to *Martin v. Patent Scaffolding*, 37 Wn. App. 37, 39, 678 P.2d 362 (1994) and *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 706, 985 P.2d 262 (1999) for the proposition that applying the discovery rule despite the survival statute would "harmonize" what they argue is an apparent conflict between the statutes. But these cases are unavailing because neither case dealt with a purported conflict between a statute of limitation and a statute of repose. Both *Martin* and *C.J.C.*, were concerned with which statute of limitations among multiple statutes of limitation applied. *Martin*, 37 Wn. App. at 39 (holding that a 3-year rather than a 4-year statute of limitations applied in product liability case); *C.J.C.*, 138 Wn.2d at 713-14 (holding that statute of limitations and discovery rule for cases of intentional childhood sexual abuse encompassed negligence claims predicated on intentional conduct where defendant failed to protect child or otherwise prevent abuse). Neither case involved a statute of repose.

The corporate survival statute is not a statute of limitations, thus, RCW 4.16.340 has no effect on it. Because RCW 23B.14.340 is a statute of repose, the discovery rule does not apply and cannot toll the corporate survival period.

Applying that rule here, it is undisputed that LCYE was dissolved in 2010 and that RN, JW, and SC brought suit in 2015. By operation of RCW 23B.14.340, any claim against LCYE would have had to have been filed within three years of its dissolution, and so the period for filing claims against LCYE expired in 2013. Because RN, JW, and SC did not file their claims until after the expiration of the survival period, their claims are barred, and LCYE was entitled to

judgment as a matter of law. We hold that the trial court did not err in granting summary judgment dismissal as to LCYE.

## II. PERSONAL LIABILITY OF CORPORATE DIRECTORS, OFFICERS, AND EMPLOYEES

The trial court not only dismissed all claims against LCYE based on RCW 23B.14.340, it also dismissed all the individual defendants based solely on the same statute. RN, JW, and SC argue that the survival statute does not bar claims against individuals in their personal capacity. LCYE argues that the survival statute bars all claims, including those against individual directors, officers and employees for their negligence or unintentional torts.

Respondents argue that the survival statute's inclusion of the terms "directors, officers, or shareholders" bars all claims against individuals in their corporate capacities, including negligent supervision or any wrong committed unless those wrongs were knowingly committed. Their argument rests on the proposition that they, as mere agents of the corporation, did not individually owe a duty to RN, JW, and SC, and that they therefore could not be liable to plaintiffs unless they intentionally and knowingly acted in the alleged tortious conduct.

We hold that the trial court erred by dismissing the individual defendants based solely on RCW 23B.14.340, without addressing whether those individuals breached a duty owed directly to the plaintiffs by sufficiently participating in tortious conduct.

A.   *Corporate Officer, Agents and Employees Can Be Held Individually Liable in Tort*

Persons are liable for their own torts. This is true even if they are acting as agents, with actual or apparent authority, or as employees, acting within the scope of employment. RESTATEMENT (THIRD) OF AGENCY § 7.01 (2006). "The liability of an officer of a corporation for his own tort committed within the scope of his official duties is the same as the liability for

14

tort of any other agent or servant." *Johnson v. Harrigan-Peach Land Dev. Co.*, 79 Wn.2d 745, 752-53, 489 P.2d 923 (1971) (quoting *Dodson v Econ. Equip. Co.*, 188 Wn. 340, 343, 62 P.2d 708 (1936)). "[A]n agent whose negligent acts or omissions in the performances of the duties entrusted to him renders his principal liable in damages, is also liable for his own negligence." *Russell v. City of Grandview*, 39 Wn.2d 551, 556, 236 P.2d 1061 (1951). But "an agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party." *Annechino v. Worthy*, 175 Wn.2d 630, 637, 290 P.3d 126 (2012) (quoting RESTATEMENT (THIRD) OF AGENCY § 7.02 (2006)).

As a general rule, there is no duty to prevent a third party from intentionally harming another unless "a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 43, 929 P.2d 420 (1997) (quoting *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 227, 802 P.2d 1360 (1991)); RESTATEMENT (SECOND) OF TORTS § 315. Special tort duties are based on the liable party's assumption of responsibility for the safety of another. For example, a school has a duty to protect students in its custody from reasonably anticipated dangers, *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 320, 255 P.2d 360 (1953); group homes of vulnerable residents have a duty arising from a special relationship to protect their residents from the foreseeable consequences of their impairments, including possible sexual assaults by staff, *Niece*, 131 Wn.2d at 46; the county has a special relationship with disabled adults when it places them with in-home caregivers, *Caulfield v. Kitsap County*, 108 Wn. App. 242, 256, 29 P.3d 738 (2001); and, the State stands in a special relationship with foster children in its charge, giving

rise to a duty in tort to protect foster children from foreseeable harms at the hands of foster parents, *H.B.H. v. State*, 192 Wn.2d 154, 178, 429 P.3d 484 (2018).

Where the State places children charged in its care with caregivers, "[s]uch caregivers are not merely third parties; they carry out the State's parens patriae responsibilities." *H.B.H.*, 192 Wn.2d at 171. Entrustment for the protection of a vulnerable victim is the foundation of a special protective relationship. *H.B.H.*, 192 Wn.2d at 173. Those relationships are also "based on the liable party's assumption of responsibility for the safety of another." *M.E. through McKasy v. City of Tacoma*, 15 Wn. App. 2d 21, 37, 471 P.3d 950 (2020) (quoting *H.B.H.*, 192 Wn.2d at 173).

LCYE took on the day-to-day parental responsibilities for maintaining the safety and protection of the vulnerable, dependent children in its care. These children were vulnerable residents. It is undisputed that LCYE had a duty of care to protect RN, JW, and SC. We hold that LCYE has a special relationship to protect the children in its care from foreseeable harms within the meaning of § 315(b). *See Niece*, 131 Wn.2d at 46. The question here is whether any director, officer, or agent of LCYE had an individual duty to RN, JW, and SC, or whether these individuals can otherwise be personally responsible to RN, JW, and SC.

B.     *Claims Against Individually Named Defendants Survive Corporate Dissolution*

Respondents argue that a plain reading of RCW 23B.14.340 requires courts to dismiss actions against all "directors, officers, or shareholders" of dissolved corporations by virtue of the titles they hold. Specifically, they argue that imparting liability on the named individuals in this case who hold those respective titles of the dissolved corporation, where the remedy period has expired, would render the statutory language meaningless. We disagree.

16

We review questions of statutory construction de novo. *Ballard Square Condo. Owners Ass'n*, 158 Wn.2d at 612. We first attempt to construe statutes from the plain meaning of their language. *Burke v. Hill*, 190 Wn. App. 897, 913, 361 P.3d 195 (2015). If this examination leads to a plain meaning, that is the end of our inquiry. *Ballard Square Condo. Owners Ass'n*, 158 Wn.2d at 612. But if there remains any ambiguity, we can turn to legislative history, principles of statutory construction and relevant case law. *Ballard Square Condo. Owners Ass'n*, 158 Wn.2d at 612. We avoid construing a statute in a way that would lead to unlikely, absurd, or strained consequences. *Advanced Silicon Materials, LLC v. Grant County*, 156 Wn.2d 84, 89, 124 P.3d 294 (2005).

RCW 23B.14.340 states, in relevant part:

> [t]he dissolution of a corporation . . . shall not take away or impair any remedy available against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution or arising thereafter, unless action or other proceeding thereon is not commenced within two years after the effective date of any dissolution.

By its plain meaning, this statute authorizes post-dissolution claims against dissolved corporations, their directors, officers, and shareholders. It preserves available remedies for any claim otherwise extinguished or impaired by the dissolution of a corporation under the harsh common law rule, for a specific period of time. It does not by itself foreclose claims arising from breach of duties owed by individuals, apart from their role in the corporation, simply because those individuals happen to be directors, officers, or shareholders of the dissolved corporation. This is because it is the dissolution of the corporation and not the statute that operates to extinguish claims. No plain reading of the statute provides that dissolution of the corporation has a preclusive effect upon *all* claims against directors, officers, or shareholders.

17

As mentioned above, RCW 23B.14.340 modified the common law rule that precluded claims against dissolved corporations. It created a survival of remedy period for claims that would otherwise be extinguished. Notwithstanding, persons are and have always been liable for the torts they commit. This was true before enactment of a survival statute, and it remains true. RCW 23B.14.340 does not modify this principle. Because agents, employees, and corporate officers all must face the legal consequences for their own tortious conduct, we hold that RCW 23B.14.340 does not bar claims brought against individuals who may be liable for their own torts pursuant to duties arising independently of their duties as corporate actors.

The reading of RCW 23B.14.340 as posited by respondents leads to strained and absurd results. Because the statute makes no distinction between what kind of claims it covers, directors, officers, or shareholders could commit intentional torts and egregious civil wrongs, including in their individual capacity, and all those claims would be extinguished at the end of the survival period even though they themselves have not "ceased to exist [so they] could not sue or be sued." *Ballard Square Condo. Owners Ass'n*, 158 Wn.2d at 609. One does not escape liability for their wrongs simply because they hold a certain title.

Our Supreme Court has held that the Legislature intended to displace the harsh common law rule that claims are absolutely barred following dissolution of the corporation when it devised RCW 23B.14.340. *Ballard Square Condo. Owners Ass'n*, 158 Wn.2d at 610-11. This statute created the right to sue a dissolved corporation as "a matter of legislative grace." *Ballard Square Condo. Owners Ass'n*, 158 Wn.2d at 619. RCW 23B.14.340 offers no additional protection against tort liability than already exists at common law.

C.      *Participation Theory of Liability*

"If a corporate officer participates in the wrongful conduct, or with knowledge approves of the conduct, then the officer, as well as the corporation, is liable for the penalties." *State v. Ralph Williams' Nw. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 322, 553 P.2d 423 (1976). "Corporate officers cannot use the corporate form to shield themselves from individual liability." *Johnson*, 79 Wn.2d at 752. This liability does not depend on piercing the corporate veil. *Ralph Williams' Nw. Chrysler Plymouth, Inc.*, 87 Wn.2d at 322. A corporate officer who takes no part in a tort committed by the corporation is generally not personally liable to third persons for such tort, but "this immunity vanishes if such corporate officer knowingly participated in, cooperated in the doing of, or directed that the acts be done." *Johnson*, 79 Wn.2d at 753.

Washington has held corporate officers personally liable for a corporation's tortious conduct when they themselves closely participated in the commission of intentional torts, including fraud and conversion. *See Dodson*, 188 Wn. at 343 (holding that president and general manager were personally liable for individual participation in conversion of property on behalf of the principal corporation where his acts would have amounted to conversion had he acted alone); *Johnson*, 79 Wn.2d at 753 (holding that corporate officers were personally liable for individual participation in fraud). Where courts have declined to extend liability from the corporation to alleged responsible corporate officers it was because the individual did not sufficiently participate in the tort. *See Annechino*, 175 Wn.2d at 637 (holding that bank officer was not individually liable for misrepresentation committed in furtherance of the principal corporation and in the absence of forming their own fiduciary duty where evidence did not show knowledge); *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 86, 18 P.3d 1144

19

(2001) (holding that although the corporate officers actively participated in the allegedly tortious transaction, they were not individually liable for conversion where the principle corporation owned the property in question).

And in *Schwarzmann v. Ass'n of Apartment Owners of Bridgehaven*, 33 Wn. App. 397, 655 P.2d 1177 (1982), the court considered whether condominium directors could be held personally liable for, inter alia, negligent conduct. The court declined to extend liability to the individual directors where evidence did not show that they "somehow knowingly participated in or condoned wrongful or negligent conduct."[4] *Schwarzmann*, 33 Wn. App. at 403-04.

In *Peterick v. State,* 22 Wn. App. 163, 182-83, 589 P.2d 250 (1978) *overruled on other grounds by Stenberg v. Pac. Power & Light Co., Inc.,* 104 Wn.2d 710, 709 P.2d 793 (1985), the court considered whether officers and directors could be held personally liable for the negligent misconduct of a subsidiary company. Employees of a subsidiary company who were harmed by an explosion that occurred at a manufacturing site sued the parent company and its directors and officers. *Peterick*, 22 Wn. App. at 182. Making no distinction between intentional or negligent torts, the court held that summary judgment in favor of the officers and directors was appropriate where there was no genuine issue of material fact as to whether the directors or officers "knowingly and actively participated in, cooperated in, or directed that an agent perform the act" precipitating the explosion. *Peterick*, 22 Wn. App. at 183-84. The court reasoned that "[w]ithout a showing of active individual involvement by the officers and directors, there can be no liability on their part." *Peterick*, 22 Wn. App. at 184.

---

[4] Although our state has not used the same terminology, the theory behind a corporate agent's individual liability for their participation in torts committed by a corporation is known in other jurisdictions as the "participation theory."

The Seventh Circuit Court of Appeals provides a useful analogy for determining whether a corporate officer's conduct would make him personally liable for negligence:

> [An] officer is [not] automatically liable for the acts of the corporation; there is no doctrine of "superiors' liability," comparable to the doctrine of respondeat superior[.]
>
> . . . .
>
> The line between a personal act and an act that is purely an act of the corporation (or of some other employee) and so not imputed to the president or to other corporate officers is sometimes a fine one, but often it is clear on which side of the line a particular act falls. If an individual is hit by a negligently operated train, the railroad is liable in tort to him but the president of the railroad is not. Or rather, not usually; had the president been driving the train when it hit the plaintiff, or had been sitting beside the driver and ordered him to exceed the speed limit, he would be jointly liable with the railroad.

*Browning-Ferris Indus. of Illinois, Inc. v. Ter Maat*, 195 F.3d 953, 956 (7th Cir. 1999) (citations omitted).

A number of jurisdictions have acknowledged that corporate officers can be personally liable for a corporation's negligence when they themselves sufficiently participated in the tort. *See Tompkins v. Burlington Island Amusement Co.*, 102 N.J.L. 411, 132 A. 670 (1926) (holding that general manager of defectively constructed amusement park was personally liable for personal injuries sustained by patrons because he was personally responsible for supervising the construction of the defective object); *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303, 788 A.2d 268 (2002) (establishing "participation theory" as mechanism for extending liability from corporation to individual directors or officers where officers negligently prepared and designed turf specifications for an athletic field); *Shipley v. Perlberg*, 140 Md. App. 257, 266, 780 A.2d 396 (2001) (acknowledging in a negligence case that an officer could be liable for torts of the corporation where he was a participant in the wrongful act); *Scribner v. O'Brien*, Inc., 169 Conn. 389, 363 A.2d 160, 167 (1975) (holding corporate officers of corporate contractor liable for

21

negligence where defendants were present daily at the construction site, supervised the work, and participated in design); *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983) (making no distinction between intentional or negligent tortious conduct where officers of a corporation could be personally liable if they participated in the conduct).

"[T]he essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort. A predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct." *Saltiel*, 170 N.J. at 303. Courts have found sufficient involvement where negligent conduct arose from "misfeasance[,]" but not "mere nonfeasance." *Wicks*, 503 Pa. at 622-23 (citations omitted); *See also Sereda v. Ctr. City Acquisitions, LLC*, 2019 PA Super 337, 222 A.3d 1161, 1169 (Pa. Super. Ct. 2019). Acts of misfeasance are affirmative acts involving active misconduct resulting in positive injury to others, while acts of nonfeasance consist of passive inaction or failure to take steps to protect others from harm. *Robb v. City of Seattle*, 176 Wn.2d 247, 436, 295 P.3d 212 (2013). Limiting attachment of liability under the participation theory to only affirmative acts shields unwitting corporate officers and agents who fail to take action to prevent the corporation from committing a tort they knew nothing about. *See Wicks*, 503 Pa. at 622.

But when there exists a special relationship, such as here, the misfeasance-nonfeasance distinction is immaterial because negligence rising from both action and inaction can result in breach. *See Robb*, 176 Wn.2d at 429-30; *Washburn v. City of Federal Way*, 178 Wn.2d 732, 758-59, 310 P.3d 1275 (2013); RESTATEMENT § 302 cmt. a ("The duties of one who merely

omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty"). This is so because a special relationship duty requires a defendant to not only conform to a standard of care in their affirmative acts but also to not omit those acts reasonably necessary for the protection of the plaintiff in guarding against foreseeable harm from third parties. *H.B.H.*, 192 Wn.2d at 169; RESTATEMENT § 314A cmt. e.

Respondents cite to *Annechino v. Worthy* for the general proposition that corporate agents must act with more than with ordinary negligence to be personally liable to a third party. 175 Wn.2d at 637. In *Annechino*, a bank officer and an employee allegedly made a negligent misrepresentation to a customer, which caused financial loss to that customer. *Annechino*, 175 Wn.2d at 637. The Annechinos argued that the bank officer and the employee owed them a quasi-fiduciary duty. *Annechino*, 175 Wn.2d at 636. The court did not find support in the record that the officer or the employee had formed their own quasi-fiduciary duties with the customer, but the court explored, arguendo, if personal liability would be extended if the bank did owe the customer such a duty. *Annechino*, 175 Wn.2d at 637. The court held that where evidence did not support that an agent knowingly made a misrepresentation, they could not be held personally liable for breach of quasi-fiduciary duties that may arise when dealing on behalf of a disclosed principal where the agent does not independently owe a duty to the third party. *Annechino*, 175 Wn.2d at 639. The court observed that the Annechinos did not allege, nor did the record indicate, that the bank officer or employee knowingly made misrepresentations. *Annechino*, 175 Wn.2d at 639. Ultimately, the court affirmed summary judgment dismissal because there

was no quasi-fiduciary duty between the bank officer or employee and the customer that could have been breached. *Annechino*, 175 Wn.2d at 638-39.

*Annechino*'s discussion on corporate agent liability did not take into account those situations where we recognize a special relationship duty under § 315(b).[5] For this reason, that case does control here.

Respondents also cite to *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 352, 449 P.3d 1040 (2019), but this case is also unavailing because it turned on whether a statute imposed a duty on an individual and not whether they sufficiently participated in tort. In *Keodalah*, a driver sued a claims adjuster under the Consumer Protection Act. *Keodalah*, 194 Wn.2d at 343. Our Supreme Court held that the Consumer Protection Act imparted no duty of good faith on the adjuster because the statutes exclusively mentioned the insurer, not the adjuster. *Keodalah*, 194 Wn.2d at 350-51. Because our Supreme Court's decision in that case was based solely on an issue of statutory construction and not on whether the adjuster could be individually liable in tort, this case also does not control.

We hold that corporate directors, officers, and agents may be personally liable for torts committed by the corporation when they are sufficiently involved in the commission of the tort. We hold that the trial court erred in dismissing claims against the individual defendants based solely on the theory that RCW 23B.14.340 is a categorical bar to these claims. We remand for the trial court to examine whether genuine issues of material fact have been raised against any of the individual defendants. The court must examine whether any of the individual defendants

---

[5] Whereas the bank officer's unknowing failure to prevent the harmful transaction may constitute "mere nonfeasance," our discussion involving a special relationship imparts a duty to take affirmative actions to prevent foreseeable harms.

sufficiently participated in the alleged torts. First, whether any of the individual defendants had the direct responsibility or authority to prevent abuse against the children. And, if so, whether they failed in the performance of that duty where they knew or should have known such abuse would occur and failed to take reasonably necessary action to protect the children.

### III. MOTION TO AMEND

RN, JW, and SC argue that the trial court erred in denying their leave to amend their second amended complaint. Respondents argue that the trial court did not err because such amendment would have resulted in prejudice, and that the amendment would have been futile. We hold that the trial court did not abuse its discretion when it denied RN, JW, and SC's motion to amend the complaint.

### A. *Standards of Review and Legal Principles*

We review a decision to grant or deny a motion to amend a pleading for a manifest abuse of discretion. *Herron v. Tribune Pub. Co., Inc.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987). A court abuses its discretion when its decision is not based on tenable grounds or tenable reasons. *Haselwood v. Bremerton Ice Arena, Inc.*, 137 Wn. App. 872, 889–90, 155 P.3d 952 (2007), *aff'd*, 166 Wn.2d 489, 210 P.3d 308 (2009).

"A party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." CR 15. Leave to amend should be freely given "except where prejudice to the opposing party would result." *Herron*, 108 Wn.2d at 165. In determining prejudice, a court may consider undue delay, unfair surprise, and futility of amendment. *Haselwood*, 137 Wn. App. at 889. A trial court does not

25

abuse its discretion by denying a motion to add a futile claim. *Ino Ino, Inc. v. City of Bellevue,* 132 Wn.2d 103, 142, 937 P.2d 154 (1997).

When an amendment raises entire new issues, a defendant is likely to suffer prejudice. *Herron*, 108 Wn.2d at 167. A trial court may consider whether pursuit of a new claim would be futile. *Shelton v. Azar, Inc.*, 90 Wn. App. 923, 928, 954 P.2d 352 (1998).

Here, RN, JW, and SC's proposed third amended complaint provided additional facts supporting allegations that the individual defendants were individually liable for negligence. The proposed third amended complaint listed particular actions and responsibilities of each individual in addition to their titles from the second amended complaint. However, the proposed third amended complaint did not plead any new theories of liability or any additional causes of action. It appears from the arguments, however, that the trial court and the respondents believed that the proposed third amended complaint sufficiently changed the allegations so as to be prejudicial to the parties. The trial court denied the amendment based on it being untimely and prejudicial.

It is clear that the proposed third amended complaint posed no prejudice to the respondents. But it is not clear how the proposed complaint was necessary for RN, JW, and SC to present their theory of individual liability to the trial court. The proposed amendment appears to be superfluous.

Because the proposed third amended complaint did not materially change the case, there was no resulting prejudice to the defendants. But denial of the motion to amend the complaint to add superfluous details did not materially affect the appellants' case, either. Thus, the proposed

26

No. 53957-8-II

amendment was unnecessary and similar to a futile claim. We hold that the trial court did not abuse its discretion when it denied RN, JW, and SC's motion to amend.

CONCLUSION

In conclusion, we hold that RCW 23B.14.340 is not tolled by a statute of limitations. We hold that the trial court did not err when it granted summary judgment in favor of the dissolved corporations. We hold that the trial court erred when it granted summary judgment in favor of the individual defendants without considering whether they could be personally liable. We hold that the trial court did not abuse its discretion when it denied the motion to amend the second amended complaint. We remand to the trial court to reconsider the individual's motions for summary judgment under the participation theory in light of the special relationship between the individuals and the plaintiffs.

Worswick, J.

We concur:

J.P.T. Sutton

Veljacic, J.

27